IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LIFESTYLE VENTURES, LLC,
an Oregon limited liability company,

    Plaintiff,

  v.

COUNTY OF CLACKAMAS, MICHAEL
MCALLISTER, and REBECCA CENIGA,

    Defendants.

Case No. 3:15-cv-1291-SB

**FINDINGS AND
RECOMMENDATION**

---

**BECKERMAN, Magistrate Judge.**

  Lifestyle Ventures, LLC ("Lifestyle") brings this action against Clackamas County and two

of its employees, Michael McAllister ("McAllister") and Rebecca Ceniga ("Ceniga") (collectively,

"Defendants"). Lifestyle alleges an equal protection claim under 42 U.S.C. § 1983, and a claim for

common law negligence, in connection with Defendants' refusal to permit the development of Lot

Page 1 - FINDINGS AND RECOMMENDATION

4200 in the Liberty Lodge Subdivision in Rhododendron, Oregon ("Lot 4200").[1] Defendants move

to dismiss the complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), for lack of

subject matter jurisdiction, or, in the alternative, pursuant to Rule 12(b)(6), for failure to state a claim

upon which relief may be granted.

The Court heard oral argument on February 29, 2016. On April 25, 2016, Lifestyle filed a

status report, indicating that Defendants' Rule 12(b)(1) motion to dismiss is now moot.[2] (ECF No.

32.) For the reasons explained below, the Court recommends that the district judge dismiss counts

one and two of the original complaint on Lifestyle's own motion, deny as moot Defendant's motion

to dismiss under Rule 12(b)(1), and grant in part, and deny in part, Defendant's motion to dismiss

under Rule 12(b)(6).

## FACTUAL AND PROCEDURAL HISTORY

Lifestyle is an Oregon corporation with its principal place of business in Brightwood,

Oregon. (Compl. ¶ 3.) Lifestyle is owned by Kip O'Connor, who is a resident of Welches, Oregon.

(Compl. ¶ 2). Defendant Clackamas County is an incorporated county of Oregon, and Defendants

Ceniga and McAllister are employed by the Clackamas County Planning Division. (Compl. ¶¶ 4-6.)

//

---

[1] The complaint also includes two due process claims, but Lifestyle agreed to dismiss those claims. (Pl.'s Opp'n 1.)

[2] Also on April 25, 2016, Lifestyle filed a motion for leave to file an amended complaint, to include an equal protection claim relating to Lot 4400 in the same subdivision. (ECF No. 30.) On May 12, 2016, Defendants filed an opposition to Lifestyle's motion for leave to file an amended complaint. (ECF No. 33.) The Court has reviewed the motion for leave to amend, and the opposition thereto, and has determined that it is appropriate to resolve at this time only the pending motion to dismiss the complaint.

In May 2007, O'Connor purchased real property located in the Liberty Lodge Subdivision in Rhododendron, Clackamas County, Oregon, referred to herein as "Lot 4200." (Compl. ¶ 7.) O'Connor sold Lot 4200 to Lifestyle. (Compl. ¶ 7.) Lot 4200 is located in the Sandy/Salmon River Principal River Conservation Area ("PRCA"), and also within the boundaries of a Special Flood Hazard Area ("SFHA"). (Compl. ¶¶ 8-9.) Development in the SFHA depends, in part, on whether the property in question is in a regulated floodplain. (Compl. ¶ 9.) If property is below the Base Flood Elevation ("BFE"), it is within a "regulated floodplain." (Compl. ¶ 9.) A Floodplain Development Permit ("FDP"), issued by the Clackamas County Planning Division, as prescribed by its Zoning and Development Ordinance ("ZDO"), is required for most development within a regulated floodplain. (Compl. ¶ 9.) Lifestyle asserts that Lot 4200 is above BFE, and consequently that the County ZDOs do not require it to obtain an FDP prior to development. (Compl. ¶ 10.)

In February 2013, Lifestyle obtained a permit to build a road along the boundary of Lot 4200. (Compl. ¶ 13.) A year later, on or about February 3, 2014, Lifestyle discovered that further development of its property had been blocked. Lifestyle alleges that Ceniga, under the supervision of McAllister, placed a note in the Lot 4200 development file, instructing that no further construction or development permits were to be granted. (Compl. ¶ 14.) Lifestyle alleges that as a result of this note, Defendants thwarted any further development of Lot 4200. (Compl. ¶¶ 16-18.)

In support of its equal protection claim against Defendants, Lifestyle alleges that Defendants have imposed requirements on Lifestyle that Clackamas County does not impose on other developers, including refusing to accept BFE certificates demonstrating that Lot 4200 is above BFE, requiring Lifestyle to obtain an FDP despite the fact that Lot 4200 is above BFE, requiring a Letter of Amendment ("LOMA") from the Federal Emergency Management Agency ("FEMA") despite

Page 3 - FINDINGS AND RECOMMENDATION

the fact that Lot 4200 is above BFE, imposing conditions on the development of Lot 4200, and placing a note in Lifestyle's file barring any further development. (Compl. ¶ 33.) In support of its negligence claim against Clackamas County, Lifestyle alleges that Defendants' unreasonable conduct in improperly enforcing zoning regulations caused a foreseeable risk of harm to Lifestyle, and did harm Lifestyle. (Compl. ¶¶ 39-43.)

## LEGAL STANDARDS[3]

The Ninth Circuit has "held that dismissal for failure to state a claim is 'proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In evaluating the sufficiency of a complaint's factual allegations, courts must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). Surviving a motion to dismiss requires that the complaint "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

//

//

---

[3] Defendants also move to dismiss the complaint pursuant to Rule 12(b)(1), on the ground that this court lacks subject matter jurisdiction. As discussed below, the Court recommends that the district judge deny Defendants' Rule 12(b)(1) motion, as moot.

Page 4 - FINDINGS AND RECOMMENDATION

## DISCUSSION

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants moved to dismiss the complaint pursuant to Rule 12(b)(1), on the ground that Lifestyle's claims are not ripe for federal adjudication because Lifestyle appealed the County's denial of Lifestyle's application for development of Lot 4200 to the Oregon Land Use Board of Appeals (LUBA), and that appeal was still pending at the time of oral argument. At oral argument, counsel for Defendants acknowledged that their Rule 12(b)(1) motion would be rendered moot if the LUBA appeal was no longer pending.

On April 25, 2016, Lifestyle filed a status report (ECF No. 32), informing the Court that it had dismissed its LUBA appeal. In that report, Lifestyle asserted that its dismissal of the LUBA appeal resolved the question of whether its claims are ripe. In correspondence with the Court, Defendants agreed. Accordingly, the Court recommends that the district judge deny as moot Defendants' Rule 12(b)(1) motion.

### B.    Motion to Dismiss for Failure to State a Claim

Defendants move to dismiss the complaint for failure to state a claim, on the ground that Lifestyle is estopped from asserting that Lot 4200 is not located within a regulated floodplain, because O'Connor took a contrary position in prior litigation. Defendants also move to dismiss the common law negligence claim, on the ground that Lifestyle has not sufficiently pled negligent conduct.

#### (1)    Judicial Estoppel

Defendants assert that judicial estoppel bars Lifestyle from asserting that Lot 4200 is *not* located within a regulated floodplain, because O'Connor, who stands in privity to Lifestyle, asserted

in prior litigation that Lot 4200 *is* located within a regulated floodplain. Lifestyle responds that there is no contradiction between these allegations. (Pl's. Opp. 16–17.) Lifestyle explains that part of Lot 4200 is properly mapped as located below BFE and within a regulated floodplain, but part of Lot 4200 lies above BFE and is improperly mapped as located within the regulated floodplain. (Pl.'s Opp'n 17-18.)

As an initial matter, Defendants ask the Court to take judicial notice of the complaint in *O'Connor v. County of Clackamas*, No. 3:11-cv-1297-SI (filed D. Or. Oct. 27, 2011) ("*O'Connor I*"). In that case, O'Connor challenged, among other things, the County's refusal to allow him to develop Lot 4400. In the *O'Connor I* complaint, O'Connor alleged that Lot 4200 is located within a regulated floodplain. (Defs.' Mot. Dismiss, Ex. 2 at ¶ 12) ("Lots 4200 - 4400 are within a regulated floodplain"). Defendants also ask the Court to take judicial notice of the relevant ZDOs, referenced in Lifestyle's complaint in this action. The Court grants Defendants' requests for judicial notice. *See United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.") (citations omitted).

Judicial estoppel is an equitable doctrine that a court may invoke in its discretion to prevent a litigant from taking contradictory positions. *Ryan v. Editions Ltd. W., Inc*., 786 F.3d 754, 763 (9th Cir.), *cert. denied*, 136 S. Ct. 267 (2015) (citation omitted). The doctrine is "intended to protect against a litigant playing 'fast and loose with the courts.'" *Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council,* 851 F.2d 1208, 1210 (9th Cir.1988) (citations omitted). "The emphasis is not on a hard and fast rule, but rather on prevention of 'intentional self-contradiction . . . as a means of

obtaining unfair advantage.'" *Ariz. v. Shamrock Foods Co.,* 729 F.2d 1208, 1215 (9th Cir. 1984) (citation omitted). Although judicial estoppel generally "bars only inconsistent positions taken by the same party in two different matters," courts have also invoked the doctrine to bar parties who stand in privity to another litigant. *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC,* 692 F.3d 983, 996–98 (9th Cir. 2012).

In *New Hampshire v. Maine*, the Supreme Court discussed a three-part analysis to determine if judicial estoppel should apply: "First, a party's later position must be 'clearly inconsistent' with its earlier position . . . . Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled' . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." 532 U.S. 742, 750–51 (2001) (citations omitted). "In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.*

The Court declines to invoke judicial estoppel here. In *O'Connor I*, O'Connor alleged that Lot 4200 is "within a regulated floodplain." In this case, Lifestyle alleges that Lot 4200 (or at least part of Lot 4200) is not located within a regulated floodplain, because some portion of Lot 4200 is located above BFE. Although the two factual allegations facially appear to contradict one another, this Court concludes that Lifestyle's position in this case does not contradict O'Connor's position in *O'Connor I*. On the contrary, O'Connor and Lifestyle have consistently maintained that Lot 4200 is improperly mapped as located within a regulated floodplain.

In *O'Connor I*, O'Connor alleged that the County violated his constitutional rights by, among other things, denying his application for a permit required for a revetment along Lots 4200, 4300, and 4400, and by requiring an FDP to develop Lot 4400, despite the fact that the portion of Lot 4400 on which the house would be built was above BFE. *O'Connor v. Cnty of Clackamas*, No. 3:11-cv-1297-SI, 2013 WL 3818143, at *1-2 (D. Or. July 22, 2013), *aff'd*, 627 Fed. Appx. 670 (9th Cir. 2015). The Court entered summary judgment in favor of Clackamas County, finding in a comprehensive opinion that Lots 4200, 4300, and 4400 were located within a "regulated floodplain," and that O'Connor does not have a constitutionally protected property interest in the development of Lot 4400, nor a constitutionally protected property interest in an FDP for the revetment. *Id.* at *17.

O'Connor also filed a state mandamus action, seeking to compel Clackamas County to issue an FDP for the revetment wall on Lots 4200, 4300, and 4400, and for construction of a single-family home on Lot 4400. The state trial court entered judgment in favor of Clackamas County, the Court of Appeals affirmed, and the Oregon Supreme Court denied review. *O'Connor v. Clackamas Cnty*, 273 Or. App. 717, 719 (2015), *rev. denied*, 358 Or. 550 (2016).

In its opinion, the Court of Appeals noted that the dispute between O'Connor and the County centered on whether Lot 4400 is located within the regulatory floodway. *See O'Connor*, 273 Or. App. at 732 ("O'Connor took the position that the subject property should not have been classified within the regulatory floodway, while the county concluded that, based on the [Flood Insurance Rate Maps ("FIRM")] and flood profiles from the adopted [Flood Insurance Study], the property was located within the floodway."). For purposes of summary judgment, the parties did not dispute that Lot 4400 is shown on the FIRM and flood profiles to be within the regulatory floodway, but "the parties disputed the legal significance of that fact." *See id.* ("O'Connor argued that his experts could

prove that the property was inadvertently mapped in the floodplain, and that the county's refusal to sign off on the LOMA was the only barrier to obtaining a LOMA and building the residence on the property."). The Court of Appeals rejected O'Connor's arguments, and explained that even if O'Connor has evidence that the property should not be classified as within the regulatory floodway, he presented no evidence that FEMA's classification of the property has changed. *Id.*

Thus, the parties have been litigating for years the issue of whether Lots 4200 and 4400 are appropriately mapped within a regulated floodplain, such that FDPs are required to develop those lots. O'Connor and Lifestyle have consistently taken the position that Lots 4200 and 4400 are improperly mapped, and that an expert could demonstrate that portions of those lots are located above BFE. The County has consistently maintained that Lots 4200 and 4400 are mapped as located within a regulated floodway, that an FDP is required to develop those lots, and that O'Connor and Lifestyle may submit a LOMA to FEMA if they disagree with the current mapping. Although Lifestyle has characterized its theory a bit differently in this case (i.e., Lot 4200 is not actually located within a regulatory floodplain) as compared to the prior case (i.e., Lot 4200 is mapped as located within a regulatory floodplain), its position has been consistent throughout the many chapters of litigation.

The Court finds that Lifestyle's position in this case is not clearly inconsistent with O'Connor's position in *O'Connor I,* that Lifestyle's pleading in this case has not created a perception that Lifestyle is seeking to mislead this Court, and that Lifestyle does not derive an unfair advantage by its pleading language. *New Hampshire,* 532 U.S. at 750–51. Accordingly, the Court recommends that the district judge deny Defendants' motion to dismiss on judicial estoppel grounds.

//

### (2)    Common Law Negligence

Lifestyle also asserts a claim for common law negligence, alleging that Defendants'
enforcement of zoning regulations was unreasonable, caused a foreseeable risk of harm to, and did
harm, Lifestyle. (Compl. ¶¶ 38-43.) Defendants move to dismiss the negligence claim, on the ground
that Lifestyle has alleged that Defendants acted willfully and maliciously, but has not alleged facts
to support its alternative claim that Defendants' conduct was negligent.

Defendants are correct that under Oregon law, allegations of intentional conduct do not
support a claim for negligence. *See Kasnick v. Cooke*, 116 Or. App. 580, 583 (1992) ("As a matter
of law and fact, there is no such thing as a negligent fist fight."). Specifically, it is settled law in this
district that "a state common-law claim of negligence may be maintained separately from a § 1983
claim *only* when the negligence claim is based on facts that are different from the facts on which the
§ 1983 claims are based." *Whilfield v. Tri-Metro. Transp. Dist.*, No. 06-1655-HA, 2009 WL 839484,
at *11 (D. Or. Mar. 30, 2009) (granting city's motion for summary judgment motion on negligence
claim, because it was based on the same operative facts as his § 1983 claims) (emphasis added); *see
also Rodrigues v. Jackson Cnty.*, No. 1:13-CV-01589-CL, 2015 WL 404577, at *4 (D. Or. Jan. 29,
2015) (citing *Kasnick*, and granting defendants' motion for summary judgment on negligence claim,
because the "negligence claim rests on the same alleged facts as his section 1983 claim"); *Aranda
v. City of McMinnville*, 942 F. Supp. 2d 1096, 1110 (D. Or. 2013) (citing *Kasnick* and stating that
"[b]ecause [the plaintiff] alleges that [the defendant] committed intentional acts [in violation of §
1983] . . . the Court grants summary judgment to County Defendants on the claim that [the
defendant's] conduct was negligent") (citations omitted); *Woods v. Gutierrez*, No. 3:11-CV-01082-
BR, 2012 WL 6203170, at *12 (D. Or. Dec. 12, 2012) (granting defendants' motion for summary

Page 10 - FINDINGS AND RECOMMENDATION

judgment, and noting that a "claim for negligence, which is based on the same conduct as [plaintiff's] claims under § 1983 . . . cannot be maintained at summary judgment"); *Saberi v. City of Portland*, No. CV 04-1396-MO, 2006 WL 2707995, at *4 (D. Or. Sept. 18, 2006) (entering judgment in favor of city on negligence claim after bench trial, because "the negligence claim is based on the same operative facts as the § 1983 claim" and "is therefore not a proper basis for a separate negligence claim"); *Shilo v. City of Portland*, No. CV 04-130-MO, 2005 WL 3157563, at *2 (D. Or. Nov. 22, 2005) (granting defendants' motion for summary judgment on negligence claim, because "plaintiffs reallege the very same facts that were used to make out [their constitutional] claims").

Nevertheless, courts in this district also recognize that while a party may not advance both negligence and constitutional claims based on the same operative facts at the summary judgment stage, a party *may* do so at the initial pleading stage. *See Rodriguez v. City of Portland*, Civil No. 09–850–KI, 2009 WL 3518004, at *2 (D. Or. Oct. 21, 2009) (noting that the courts in *Shilo* and *Whitfield* granted summary judgment, not motions to dismiss, and that "the principle set forth in *Shilo* and its progeny does not conflict with Rule 8 and does not apply at the initial pleading stage"); *Woods*, 2012 WL 6203170, at *2 (citing *Rodriguez* and noting distinction between dismissal of negligence claim on a motion to dismiss versus a motion for summary judgment). Accordingly, "at the initial pleading stage a plaintiff may base claims of negligence under state law and claims of constitutional violations under 42 U.S.C. § 1983 on the same facts." *Rodriguez*, 2009 WL 3518004, at *2.

This Court finds that Lifestyle may proceed at the pleading stage with its alternatively-pled negligence claim, despite the fact that the claim is based on the same operative facts as Lifestyle's

Page 11 - FINDINGS AND RECOMMENDATION

constitutional claim. However, the Court agrees with Defendants that it is improper for Lifestyle to incorporate its allegations of intentional misconduct into its negligence claim. *See* Compl. ¶¶ 25, 35, 37-38 (alleging willful and malicious conduct, conduct "motivated by animus, ill-will, and vindictiveness," and incorporating all preceding paragraphs in negligence claim). The Court recommends that the district judge grant Defendants' motion to dismiss the negligence claim, without prejudice, and with leave to amend to omit the incorporation of any paragraphs alleging intentional, willful, or malicious misconduct.

## CONCLUSION

For the reasons stated, the district judge should DISMISS Lifestyle's First and Second Claims for Relief on Lifestyle's own motion, and GRANT in part, and DENY in part, Defendants' motion to dismiss (ECF No. 18), without prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 18th day of May, 2016.

*Stacie F. Beckerman*
_____
STACIE F. BECKERMAN
United States Magistrate Judge