IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LIFESTYLE VENTURES, LLC,
an Oregon Limited Liability Company,

    Plaintiff,

  v.

COUNTY OF CLACKAMAS, MICHAEL
MCALLISTER, and REBECCA CENIGA,

    Defendants.

Case No. 3:15-cv-01291-SB

**FINDINGS AND
RECOMMENDATION**

**BECKERMAN, Magistrate Judge**.

  Lifestyle Ventures, LLC ("Lifestyle") brings this action against Clackamas County (the "County") and two of its employees, Michael McAllister and Rebecca Ceniga (collectively, "Defendants"). In its original complaint, Lifestyle alleged due process and equal protection claims under 42 U.S.C. § 1983 and a claim for common law negligence, in connection with Defendants' refusal to permit development of Lot 4200 in the Liberty Lodge Subdivision in Rhododendron,

Page 1 - FINDINGS AND RECOMMENDATION

Oregon ("Lot 4200"). Lifestyle now moves, pursuant to Federal Rule of Civil Procedure ("Rule") 15(a), for leave to file an amended complaint to remove claims for substantive and procedural due process violations, to amend its common law negligence claim, and to add equal protection and negligence claims relating to Lot 4400 in the same subdivision. (ECF Nos. 30 and 31.)

The Court has already dismissed Lifestyle's due process claims, and granted Lifestyle leave to amend its negligence claim, in connection with Defendants' earlier-filed motion to dismiss. (*See* Aug. 4, 2016 Order at 10 (ECF No. 46) (granting Lifestyle's motion to dismiss its first and second claims for relief, and granting Defendants' motion to dismiss the negligence claim, with leave to amend).) Thus, the only issue to resolve is whether the Court should grant Lifestyle leave to amend its complaint to add claims relating to Lot 4400. Defendants oppose Lifestyle's motion.

For the reasons explained below, the Court recommends that the district judge deny Lifestyle's motion for leave to file an amended complaint.

## BACKGROUND

For the purposes of this recommendation, the Court adopts the facts and procedural history presented in the Findings and Recommendation referred to Judge Brown on May 18, 2016 (ECF No. 34), as supplemented herein.

## LEGAL STANDARDS

"Whether to grant leave to amend is committed to the sound discretion of the district court." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't, AFL-CIO,* 770 F.3d 834, 845 (9th Cir. 2014). The Ninth Circuit has emphasized that "[t]he standard for granting leave to amend is generous," *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (citation omitted), because the purpose of Rule 15(a) is "to facilitate decision on the merits, rather

than on the pleadings or technicalities." *Novak v. United States,* 795 F.3d 1012, 1020 (9th Cir. 2015) (citation omitted). Courts generally consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint." *Corinthian Colls.,* 655 F.3d at 955. However, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1114, 1116 (9th Cir. 2014) (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). Defendants have not opposed the motion on the grounds of delay, prejudice, bad faith, or prior amendment. Thus, leave to amend turns on whether amendment would be futile. *See Corinthian Colls.*, 655 F.3d at 995 (making the same observation).

The "proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citation omitted); *Gandhi v. Sitara Capital Mgmt., LLC.*, 721 F.3d 865, 869 (7th Cir. 2013) ("District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss."). To survive a Rule 12(b)(6) "motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## DISCUSSION

Defendants urge the Court to deny Lifestyle's motion for leave to amend, on the ground that the proposed claims relating to Lot 4400 have been fully litigated in a prior action, or they could have been litigated in that action, referencing *O'Connor v. Cty. of Clackamas*, No. 3:11-cv-1297-SI,

Page 3 - FINDINGS AND RECOMMENDATION

2013 WL 3818143 (D. Or. July 22, 2013), *aff'd*, 627 Fed. Appx. 670 (9th Cir. 2015) ("*O'Connor I*"). Defendants maintain that Lifestyle stands in privity with the plaintiffs in *O'Connor I*, and that Lifestyle's current claims are barred by res judicata. The Court agrees.

**A.    O'Connor I**

In *O'Connor I*, plaintiff Kip O'Connor ("O'Connor") and others alleged that the County and its planning officials violated O'Connor's substantive and procedural due process rights by, among other things, preventing the development of a single family residence on Lot 4400. The Honorable Michael H. Simon entered summary judgment in favor of the County and its officials finding, among other things, that local regulations authorized the County to: (a) determine that Lot 4400 was located below Base Flood Elevation (BFE); (b) require a Flood Development Permit (FDP) because the proposed residence on Lot 4400 was located below BFE; (c) deny the FDP; and (d) require a Letter of Map Amendment (LOMA) from the Federal Emergency Management Agency (FEMA) to remove the proposed Lot 4400 footprint from the Special Flood Hazard Area. *See O'Connor I*, 2013 WL 3818143, at *13-15. Specifically, Judge Simon concluded that "FEMA, the Clackamas County Circuit Court, the hearings officer, and this Court have all found [the Clackamas County Floodplain Manager's] determination that all of Tax Lot 4400 is within the regulated floodway is warranted and appropriate." *Id.* at 27. Judge Simon also held that "Plaintiffs do not have a constitutionally protected property interest in the FDP for . . . the single family residence [on Lot 4400]." *Id.* at *16. Plaintiffs appealed, and the Ninth Circuit affirmed the Court's grant of summary judgment.

///

///

///

B.    **Res Judicata**

The doctrine of res judicata governs the preclusive effects of final judgments on subsequent actions, and includes two distinct applications: "claim preclusion" and "issue preclusion." *See Taylor v. Sturgell*, 533 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"). By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor*, 553 U.S. at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)).

Where, as here, a party invokes the res judicata effect of a prior federal court judgment, the Court applies federal law. *See Taylor*, 553 U.S. at 891 ("The preclusive effect of a federal-court judgment is determined by federal common law."); *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 n.11 (9th Cir. 1992) ("The res judicata effect of federal court judgments is a matter of federal law.").

1.    **Claim Preclusion**

Claim preclusion and issue preclusion represent two separate applications of res judicata. Claim preclusion is "the preclusive effect of a judgment in foreclosing litigation of matters that should have been raised in an earlier suit." *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 376 n. 1 (1985). The doctrine is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity of parties or privity between parties." *Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 713 (9th Cir. 2001). Claim preclusion binds parties to a suit and their privies "'not only as to every matter which was offered and received

Page 5 - FINDINGS AND RECOMMENDATION

to sustain or defeat the claim or demand, but as to any other admissible matter'" that could have been offered for that purpose. *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948) (quoting *Cromwell v. Sac County*, 94 U.S. 351, 352 (1877)).

Lifestyle does not dispute the finality of the *O'Connor I* judgment, and does not seriously dispute that it stands in privity with the *O'Connor I* plaintiffs. The Court finds that the *O'Connor I* judgment was a final judgment on the merits, and that the privity of parties here is sufficient to satisfy application of res judicata because plaintiff O'Connor was the owner of Lot 4400 in *O'Connor I*, and now O'Connor owns plaintiff Lifestyle, and Lifestyle owns Lot 4400. (Am. Compl. ¶ 2, ECF No. 42); *see also O'Connor I*, 2013 WL 3818143, at *1 n.1 ("For purposes of this Opinion, when discussing the ownership of a property or an individual or entity against whom an action was allegedly taken by Defendants, the Court generally references 'Plaintiffs,' meaning O'Connor, Lifestyle, and Konell, singularly or together in any combination, notwithstanding the fact that Lifestyle is not a party."). Thus, the application of claim preclusion turns on the identity of claims between those in *O'Connor I* and this action.

The Ninth Circuit applies four factors to determine if there is an identity of claims: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011) (citation omitted). The Ninth Circuit has determined that the fourth factor is the most important. *Id.*

Lifestyle argues that claim preclusion cannot apply here, because its new Lot 4400 claims arise out of a later, separate transaction than the transaction at issue in *O'Connor I*. Lifestyle asserts that its new Lot 4400 claims arise from Defendants' denial of a 2016 permit application, not the denial of the 2010 permit application at issue in *O'Connor I*.[1] The 2016 permit application included a slightly revised site plan, with the proposed residence on Lot 4400 three feet upstream from the footprint proposed in the 2010 permit application. (Reply in Supp. of Mot. to Amend at 8.)

If Lifestyle were seeking to add equal protection and negligence claims relating to the 2010 permit denial, claim preclusion would bar those claims because Lifestyle could have included those claims in *O'Connor I* (and, indeed, as Defendants point out, the original *O'Connor I* complaint included an equal protection claim). However, Lifestyle's new Lot 4400 claims arise out of a new transaction–the 2016 permit denial–and therefore the claims arise from a different (albeit substantially similar) nucleus of facts. *See Lanier v. Clovis Unified Sch. Dist. Bd. of Educ.*, No. 1:11-cv-01613-LJO-GSA, 2012 WL 1355674, at * 6 (E.D. Cal. Apr. 18, 2012) (holding that plaintiff's claims were not barred, where no identity of claims existed because plaintiff challenged defendant's failure to provide him a sports officiating contract in a later year than in an earlier action).

Lifestyle and its privies could not have asserted in *O'Connor I* its claims relating to the 2016 permit denial, because the *O'Connor I* judgment entered in September 2013. As a result, *claim* preclusion does not bar the new Lot 4400 claims. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1463 (9th Cir. 1993) (holding that judgment in earlier case "'cannot

---

[1]  Notably, Lifestyle filed its latest permit application on March 31, 2016, just a few weeks before Lifestyle filed its motion for leave to amend. (Am. Compl. ¶ 12.) It is not clear if Lifestyle's new claims are ripe for adjudication, but Defendants do not challenge the motion for leave to amend on ripeness grounds.

Page 7 - FINDINGS AND RECOMMENDATION

be given the effect of extinguishing claims which did not even then exist and which could not possibly have been ruled upon in the previous case'") (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)). Nevertheless, the Court concludes that Lifestyle's new Lot 4400 claims are barred by issue preclusion. *See* 18 Charles Alan Wright et al., Fed. Prac. & Proc. § 4409 (2d ed.) ("[C]laim preclusion often cannot apply in settings of continuing or interrupted and renewed conduct, and . . . the result may be burdensome repetitive litigation. To the extent that greater protection is needed, it is better to rely on issue preclusion than on efforts to draw into claim preclusion matters that could not reasonably be advanced in the first litigation.").

### 2.    Issue Preclusion

Issue preclusion bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)); *Pool Water Prod. v. Olin Corp.*, 258 F.3d 1024, 1031 (9th Cir. 2001) ("It precludes relitigation of both issues of law and issues of fact.").

Issue preclusion bars successive litigation if: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012) (citing *Montana v. U.S.*, 440 U.S. 147, 153-54 (1979)). The only element at issue here is whether the issue at stake in these proceedings is identical to the issue at stake in *O'Connor I*. The Court concludes that the issues are identical.

Lifestyle alleges in its new Lot 4400 claims that Defendants intentionally treated it differently than other property owners, and were negligent, by refusing to accept as accurate the elevation

certificates submitted by Lifestyle, and by requiring Lifestyle to obtain an FDP or LOMA to develop Lot 4400. (Am. Compl. ¶¶ 14-22.) In *O'Connor I*, O'Connor alleged that the County violated due process by refusing to accept as accurate the elevation certificate submitted by O'Connor, and by requiring him to obtain an FDP or LOMA to develop Lot 4400. Judge Simon entered summary judgment in favor of the County and its planning officials. Lifestyle argues that issue preclusion does not apply here, because the issues decided in *O'Connor I* applied only to the specific Lot 4400 footprint proposed in 2010, and the new claims relate to a new Lot 4400 footprint, located three feet away from the originally-proposed footprint. (Reply to Supp. Mem. at 5-8.) Lifestyle reads the *O'Connor I* opinion too narrowly.

In *O'Connor I*, Judge Simon held that the County's "determination that all of Tax Lot 4400 is within the regulated floodway is warranted and appropriate." *O'Connor I*, 2013 WL 3818143, at *27. Judge Simon specifically noted that FEMA, the Clackamas County Circuit Court, the county hearings officer, and the Court agreed with the County's determination that all of Lot 4400 is located within the regulated floodway. *Id.* Judge Simon found that the County considered contrary elevation information provided by O'Connor's surveyor, but nevertheless appropriately determined that Lot 4400 is located within the regulated floodway. *Id.* at *14.[2] Judge Simon held that the County has the authority to make the determination that Lot 4400 is located within the regulated floodway, the

_____

[2] Lifestyle points out other excerpts from the *O'Connor I* opinion in which Judge Simon discusses the elevation of the proposed footprint, arguing that Judge Simon addressed only whether the proposed footprint is located below BFE, not all of Lot 4400. However, Judge Simon referred several times in his opinion to the County's conclusion that "all of" Lot 4400 is located below BFE (*see O'Connor I*, 2013 WL 3818143, at *5, 6, 20, 24, 26, 27), and clearly held that "FEMA, the Clackamas County Circuit Court, the hearings officer, and this Court have all found [the County's] determination that *all of* Tax Lot 4400 is within the regulated floodway is warranted and appropriate." *Id.* at *27 (emphasis added).

Page 9 - FINDINGS AND RECOMMENDATION

County has the discretion to deny an FPD and offer the option of a LOMA to allow FEMA to weigh in on BFE, and that the County has discretion to approve or deny an FDP even if a developer has not met the enumerated "approval criteria." *Id.* at *14-15.

O'Connor argued in *O'Connor I* that the County was wrong about its determination of Base Flood Elevation on Lot 4400, and that the County violated his constitutional rights by denying him a permit to develop Lot 4400. Again in this case, Lifestyle argues that the County is wrong about the Base Flood Elevation on Lot 4400, and that the County violated its constitutional rights by denying him a permit to develop Lot 4400. Indeed, Lifestyle is relying upon the same data to challenge the County's elevation calculation in this case, that it relied on in *O'Connor I*. (*See* Elevation Certificate prepared by Dan Gilbert, O'Connor Decl. Ex. 5; and *O'Connor I*, 2013 WL 3818143, at *6 (referencing technical data prepared by Dan Gilbert).) Lifestyle had a full and fair opportunity to litigate the County's determination of BFE on Lot 4400, and its denial of a permit to develop Lot 4400. Judge Simon has already decided these issues on their merits, and Lifestyle is estopped from litigating these issues again under the guise of different claims.

To hold otherwise would allow Lifestyle to submit a new Lot 4400 footprint every few years, just a few feet away from the last footprint, and subject the County to years-long federal litigation with every new permit application. Courts have a duty to protect parties from "the expense and vexation attending multiple lawsuits" raising the same issues. *Taylor*, 553 U.S. at 892.[3] Issue

---

[3] In fact, this is the third lawsuit brought by Lifestyle or its privies challenging the County's denial of an FDP to build on Lot 4400. The *O'Connor I* plaintiffs also filed a mandamus action in Clackamas County Circuit Court in 2010, seeking an order requiring the County to issue the FDP. *See O'Connor I*, 2013 WL 3818143, at *8. In 2012, the Clackamas County Circuit Court granted summary judgment in favor of the County. *Id.*

Page 10 - FINDINGS AND RECOMMENDATION

preclusion bars Lifestyle's new Lot 4400 claims, and therefore the Court concludes that amending the complaint to add the Lot 4400 claims is futile.

## CONCLUSION

For the reasons stated, the district judge should deny Lifestyle's motion for leave to file a first amended complaint to add new claims relating to Lot 4400 (ECF No. 30). The district judge should allow Lifestyle to amend its original negligence claim consistent with the Court's May 18, 2016, Findings and Recommendation, but the amended complaint should not include any claims relating to Lot 4400, or any due process claims.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 24th day of October, 2016.

_____
STACIE F. BECKERMAN
United States Magistrate Judge

Page 11 - FINDINGS AND RECOMMENDATION